# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF TENNESSEE
# NASHVILLE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | N0. 3:17-cr-00039 |
| ) | Chief Judge Crenshaw |
| ADEBOWALE IJIYODE ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION AND ORDER

Pending before the Court is Adebowale Ijiyode's Motion to Suppress Evidence (Doc. No. 47), to which the Government has responded in opposition (Doc. No. 53). Neither party requests a hearing, nor is one necessary because the Motion presents a legal issue based upon unchallenged facts that were presented in an Affidavit for Search Warrant. For the reasons that follow, the Motion to Suppress will be denied.

### I. Factual Background

The Affidavit for Search Warrant sets forth the following facts:

On February 10, 2017, a Postal Inspector was "profiling parcels suspected of containing illegal narcotics," when he came upon a package mailed from San Francisco, California, and addressed to a recipient at 3035 George Buchanan Drive, Lavergne, Tennessee. (Doc. No. 53-1, Affidavit ¶ 10). The inspector noticed that the flaps on the parcel were glued and, suspicions aroused, had a DEA drug detection canine named Eclipse sniff the parcel. After a "positive alert" for the odor of illegal narcotics from Eclipse, the inspector sought and obtained a search warrant for the parcel. (Id. ¶ 12).

1

Upon opening the package and removing its contents, the inspector found three clear, vacuum-sealed bags containing marijuana that weighed a total of three pounds. Two of the bags were then reinserted into the package, along with a tracking device and a device to alert law enforcement officers when the parcel was opened. (Id. ¶ 14).

On February 14, 2017, the package was delivered to 3035 George Buchanan Drive and subject to surveillance by agents. Although an "apparent resident" entered and exited the residence "multiple times," he did not touch the package. (Id. ¶ 16).[1]

Around 5:00 p.m., a vehicle stopped near the residence. The driver exited the vehicle, picked up the package, and then returned to the vehicle. (Id.).[2] The vehicle was then followed by agents.

At one point, the vehicle stopped, and an occupant moved the package from the passenger compartment to the trunk. (Id. ¶ 17). The vehicle, still under surveillance, proceeded to a grocery store parking lot where a passenger "exited the vehicle without the subject parcel," entered the store, and then returned to the vehicle. (Id. ¶ 18).

The vehicle was then followed to 1312 South Hampton Court, Antioch, Tennessee, where it was observed pulling into an attached garage. "The GPS tracking device included in the package indicated that the Subject Parcel was also in the Target Residence." (Id. ¶ 19). Agents could not tell, however, whether the package had been opened because the "electronic device to alert Law Enforcement Officers" apparently was not working correctly. (Id. ¶ 20).

Based upon the foregoing, agents sought a search warrant for the residence located at 1312

---

[1] In conjunction with placing the tracking device in the parcel, agents obtained an anticipatory search warrant for the George Buchanan Drive residence.

[2] The initial Affidavit stated that a passenger from the vehicle picked up the package, but a Supplemental Affidavit explained that this was in error, and that the driver picked up the package. (Doc. No. 53-1 at 19, Supplemental Affidavit ¶ 5).

South Hampton Court. At approximately 6:02 p.m., which was little more than an hour after the package was picked up from the George Buchanan Drive residence, a Magistrate Judge issued a search warrant. During the subsequent search agents discovered and confiscated the package, four firearms, small packages of alleged narcotics, financial records, and cellphones, among other things. Ijiyode seeks to suppress the fruits of that search as well as other evidence that was discovered based on that search.

## II. Legal Discussion

"[T]he right of a citizen to retreat into the home and 'there be free from unreasonable governmental intrusion' stands at the core of the Fourth Amendment." United States v. Brown, 828 F.3d 375, 381 (6th Cir. 2016) (quoting Kyllo v. United States, 533 U.S. 27, 31 (2001)). Therefore, absent exigent circumstances, seizures inside a home without a warrant are presumptively unreasonable. Welsh v. Wisconsin, 466 U.S. 740, 748–749 (1984); Steagald v. United States, 451 U.S. 204, 211–212 (1981); Payton v. New York, 445 U.S. 573, 586 (1980).

Ijiyode argues that his right to be free from an unreasonable search was violated because the tracker device's location in the residence was used as a basis for securing the search warrant. Two Supreme Court decisions – United States v. Knotts, 460 U.S. 276 (1983) and United States v. Karo, 468 U.S. 705 (1984) – provide the bookends for analysis of this argument.

Knotts involved an investigation relating to a conspiracy to manufacture controlled substances, including methamphetamine. With the permission of the owner, police placed a beeper inside of a five gallon drum containing chloroform purchased by defendant. When defendant picked up the drum, police followed defendant's car by tracking the radio signal emitted by the beeper. Eventually, defendant stopped at a cabin and police obtained a search warrant for the cabin based

3

largely upon the data collected through use of the beeper. The Supreme Court found no Fourth Amendment violation under these circumstances.

Tellingly, there was no evidence in Knotts that the beeper was monitored while the drum was inside the cabin; rather the issue was whether "a person traveling in an automobile on public thoroughfares has [a] reasonable expectation of privacy in his movements from one place to another." 460 U.S. at 281. Officers had the right to follow defendant on city streets, and "[n]othing in the Fourth Amendment prohibited the police from augmenting the sensory faculties bestowed upon them at birth with such enhancement as science and technology afforded them in this case." Id.

In Karo, as in Knotts, agents were given permission to install a beeper inside a container, then used the beeper to track the movement of the container to various locations, including a number of private residences and a commercial storage facility. Ultimately, "the beeper was used to locate [the container] in a specific house in Taos, N.M., and that information was in turn used to secure a warrant for the search of the house." Id. The Supreme Court concluded that using the beeper to monitor the movement of the container within private residences violated the Fourth Amendment. Distinguishing Knotts, the Court wrote:

> The monitoring of an electronic device such as a beeper is, of course, less intrusive than a full-scale search, but it does reveal a critical fact about the interior of the premises that the Government is extremely interested in knowing and that it could not have otherwise obtained without a warrant. The case is thus not like Knotts, for there the beeper told the authorities nothing about the interior of Knotts' cabin. The information obtained in Knotts was "voluntarily conveyed to anyone who wanted to look ...," 460 U.S. at 281, 103 S. Ct. at 1085; here, as we have said, the monitoring indicated that the beeper was inside the house, a fact that could not have been visually verified.

Id. at 715

The Government analogizes this case to Knotts and asserts that no violation of the Fourth Amendment occurred within the ambit of Karo. It argues that "no search occurred during the brief moment in which agents used the tracking device" because use of the tracking device "simply confirmed" what agents already knew through visual observation, *i.e.*, that the package was at the South Hampton Court residence. The Government reads Karo's holding too narrowly.

The Supreme Court characterized Karo as "present[ing] the question whether the monitoring of a beeper in a private residence, a location not open to visual surveillance, violates the Fourth Amendment rights of those who have a justifiable interest in the privacy of the residence." 468 U.S. at 715. "At the risk of belaboring the obvious," the Supreme Court stated that "private residences are places in which the individual normally expects privacy free of governmental intrusion not authorized by a warrant[.]" Id. The Court continued:

> In this case, had a DEA agent thought it useful to enter the Taos residence to verify that the [container] was actually in the house and had he done so surreptitiously and without a warrant, there is little doubt that he would have engaged in an unreasonable search within the meaning of the Fourth Amendment. For purposes of the Amendment, the result is the same where, without a warrant, the Government surreptitiously employs an electronic device to obtain information that it could not have obtained by observation from outside the curtilage of the house. The beeper tells the agent that a particular article is actually located at a particular time in the private residence and is in the possession of the person or persons whose residence is being watched. Even if visual surveillance has revealed that the article to which the beeper is attached has entered the house, the later monitoring not only verifies the officers observations but also establishes that the article remains on the premises.

Id. at 715(emphasis added); see also United States v. Riley, 858 F.3d 1012, 1018 (6th Cir. 2017) (upholding denial of a suppression motion where GPS was used to track defendant to a hotel but not used to identify a particular room, and noting that Karo drew a distinction between use of a tracking device in public areas versus private residences, with the demarcation line being the threshold to the home).

5

This does not end the inquiry, however. "[I]f sufficient untainted evidence was presented in the warrant affidavit to establish probable cause, the warrant was nevertheless valid." Karo, 468 U.S. at 719. In other words, a reviewing court should excise any improper statements from the affidavit and determine whether the remaining portion establishes probable cause. Franks v. Delaware, 438 U.S. 154, 156 (1978); United States v. Beals, 698 F.3d 248, 266 (6th Cir. 2012).

Here, the only thing possibly "tainted" in the affidavit is the statement that, "the GPS tracking device included in the package indicated that the Subject Parcel was also in the Target Residence." (Aff. ¶ 19). Even if that language is extracted, however, there was more than a sufficient basis for the issuance of a search warrant.

For purposes of the Fourth Amendment's warrant requirement, "[p]robable cause is defined as 'reasonable grounds for belief, supported by less than *prima facie* proof but more than mere suspicion.'" United States v. King, 227 F.3d 732, 739 (6th Cir. 2000) (quoting United States v. Bennett, 905 F.2d 931, 934 (6th Cir. 1990)). "In assessing whether a warrant to search a residence passes muster . . . , the 'critical element . . . is . . . that there is reasonable cause to believe that the specific 'things' to be searched for and seized are located on the property to which entry is sought.'" United States v. Abernathy, 843 F.3d 243, 249 (6th Cir. 2016) (quoting Zurcher v. Stanford Daily, 436 U.S. 547, 556 (1978).

Without the "tainted" sentence, there was more than reasonable cause to believe that marijuana would be found at the target residence. A box known to contain pounds of marijuana was delivered to the George Buchanan Drive residence and picked up by the driver of a car. That car was followed to a grocery store, and then to the garage attached to the residence on South Hampton Court. At no point was the package observed being taken out of the car (other than to be relocated

6

from the passenger compartment to the trunk), nor is there any evidence that agents lost sight of the vehicle from the time the package was picked-up until the vehicle was driven into the attached garage. The "totality of the circumstances," and "practical common sense," United States v. Smith, 510 F.3d 641, 652 (6th Cir. 2007), leads to the conclusion that marijuana would be found at 1312 South Hampton Court in Antioch on the evening of February 14, 2017.

### III. Conclusion

On the basis of the foregoing, Ijiyode's Motion to Suppress Evidence (Doc. No. 47) is hereby **DENIED**.

IT IS SO ORDERED.

_____
WAVERLY D. CRENSHAW, JR.
CHIEF UNITED STATES DISTRICT JUDGE