# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF TENNESSEE
# NASHVILLE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | N0. 3:17-cr-00039 |
| | ) | **Chief Judge Crenshaw** |
| ADEBOWALE IJIYODE | ) | |

## MEMORANDUM OPINION AND ORDER

On April 9, 2018, this Court entered a Memorandum Opinion and Order (Doc. No. 54) denying Defendant's Motion to Suppress (Doc. No. 47) the fruits from a search on February 14, 2017 at 1312 South Hampton Court, Antioch, Tennessee. In doing so, the Court first found that, insofar as a GPS tracker device secreted in a package served as the basis for the search warrant's conclusion that the package was in the residence, the search was illegal under United States v. Karo, 468 U.S. 705 (1984). However, the Court went on to write:

> This does not end the inquiry, however. "[I]f sufficient untainted evidence was presented in the warrant affidavit to establish probable cause, the warrant was nevertheless valid." Karo, 468 U.S. at 719. In other words, a reviewing court should excise any improper statements from the affidavit and determine whether the remaining portion establishes probable cause. Franks v. Delaware, 438 U.S. 154, 156 (1978); United States v. Beals, 698 F.3d 248, 266 (6th Cir. 2012).
>
> Here, the only thing possibly "tainted" in the affidavit is the statement that, "the GPS tracking device included in the package indicated that the Subject Parcel was also in the Target Residence." (Aff. ¶ 19). Even if that language is extracted, however, there was more than a sufficient basis for the issuance of a search warrant.

                     \*                              \*                            \*

> Without the "tainted" sentence, there was more than reasonable cause to believe that marijuana would be found at the target residence. A box known to contain pounds of marijuana was delivered to the George Buchanan Drive residence and picked up by the driver of a car. That car was followed to a grocery store, and then to the garage attached to the residence on South Hampton Court. At no point was the package observed being taken out of the car (other than to be relocated from the passenger compartment to the trunk), nor is there any evidence that agents lost sight

of the vehicle from the time the package was picked-up until the vehicle was driven into the attached garage. The "totality of the circumstances," and "practical common sense," United States v. Smith, 510 F.3d 641, 652 (6th Cir. 2007), leads to the conclusion that marijuana would be found at 1312 South Hampton Court in Antioch on the evening of February 14, 2017.

(Doc. No. 54 at 6-7).

On August 3, 2018, after a change in counsel, Defendant filed a Motion to Reconsider.[1] He argues that this Court's reliance on Karo and Franks "in resolving the impact of the unconstitutional search on the subsequent search warrant" was misplaced, (Doc. No. 60 at 2), because "those cases are not comprehensive statements of the relevant law and ignore a critical factual determination that the Court must make." (Id.). Instead, according to Defendant, "the Court should have applied Murray v. United States, 487 U.S. 533, 542 (1988), as interpreted by the Sixth Circuit in United States v. Jenkins, 396 F.3d 751, 758 (6th Cir. 2005)." (Id.).

Murray was thoroughly discussed in Jenkins, with the Sixth Circuit writing:

All courts of appeals to have considered the matter . . have interpreted Murray to mean that, . . . for evidence to be inadmissible due to the government's failure to collect it via an independent source, the tainted information presented to the judge must affect the judge's decision in a substantive, meaningful way. . . . Under this interpretation of Murray, the simple fact that an application for a warrant contains information obtained from an illegal search does not by itself signify that the independent source doctrine does not apply. . . . If the application for a warrant "contains probable cause apart from the improper information, then the warrant is lawful and the independent source doctrine applies, providing that the officers were not prompted to obtain the warrant by what they observed during the initial entry."

The rationale for explicitly linking the Murray independent source rule with the approach of considering the sufficiency of the untainted affidavit, as other circuits have done, is sound and consistent with the rationale underlying Murray. The idea behind Murray and related cases is that police who carry out a search that they

---

[1] That Motion has been extensively briefed by the parties (Doc. Nos. 60, 64, 77 & 78), including a "Post-Status Conference Supplemental Brief" filed by Defendant on September 27, 2018 (Doc. No. 81), and the Government's Response (Doc. No. 82) thereto filed the same day. The Court has considered all of those filings in rendering this opinion.

2

> should not have carried out should be put in the same, but no worse, position than they would have been absent any error or misconduct. . . . Invalidating a search warrant because the magistrate was affected in some minor way by tainted information, when the warrant would have been granted even without the tainted information, would put the police in a worse position than they would have been in had they not presented the tainted information to the magistrate.

Jenkins, 396 F.3d at 758-9 (internal citations omitted).

This Court's decision to deny the Motion to Suppress was not inconsistent with either Jenkins or Murray. True, the information about the GPS tracker being in 1312 South Hampton Court put a taint on the warrant, but the tracking of it to that location was lawful and there was more than enough evidence in the search warrant affidavit to establish probable cause even without that information.

Nor was this Court's reliance on Franks misplaced. Indeed, the Sixth Circuit in Jenkins found Franks to have presented "an analogous situation," and relied on Franks for the proposition "that false or reckless statements in a warrant should be set aside and . . . the warrant should then be examined to determine 'if what is left is sufficient to sustain probable cause.'" Jenkins, 396 F.3d 759 (quoting Franks, 438 U.S. at 171-72). That is exactly what the Court did in its initial ruling.

Regardless, any gaps in the evidentiary record were filled by Gannon Hicks, a Special Agent with the Drug Enforcement Administration, who testified at the evidentiary hearing on September 5, 2016, and by Mark Anderson, a Nashville Metropolitan Police Officer and former member of the now-defunct 20th Judicial District Drug Task Force, who testified on September 26, 2018.

Hicks testified that, as the events relating to delivery of the package were transpiring on February 14, 2017, he was monitoring communications from his office in the Federal Building in Nashville, Tennessee. More specifically, he was in telephonic communication with Anderson and Dave Wilson, a Postal Inspector, one or the other of whom told Hicks about the progress of the

package and that the vehicle under surveillance with the package on board had driven to the South Hampton Court address. By this point in time, Hicks knew that the anticipatory search warrant for 3035 George Buchanan would be not be executed, and that a search warrant for the South Hampton Court residence was necessary. He also unequivocally testified that the GPS tracker indication that it was in the garage did not lead him to seek a search warrant of that residence.

Hick's version of events was confirmed by Anderson. Anderson testified that, because the South Hampton residence is located on a cul-de-sac, live visual surveillance was impossible. Therefore, a pole camera had been set up to capture the comings and goings at the residence. He also testified that he was watching a live video feed to his cellphone around 5:45 p.m. on February 14, 2017, and actually saw the vehicle enter the garage via that feed after it had been followed by other officers to that location.

Contrary, to counsel's suggestion at the September 26, 2018 hearing, the report prepared by Anderson does not undercut his testimony. Anderson wrote:

> 12. Agents observed the vehicle leave the grocery store parking lot and drive to 1312 South Hampton Court, Antioch 37013. At approximately 5:46 p.m., the vehicle pulled inside a garage attached to 1312 South Hampton Court. The GPS tracking device included in the package indicated that the Subject Parcel was also in 1312 South Hampton Court.

(Doc. No. 74-8 at 3). True, the report does not mention a pole camera, but a fair reading of that passage suggests that agents in some form or fashion observed the vehicle pulling into the garage and the GPS tracker merely confirmed what had been seen.

In his "Post Status Conference Supplemental Brief," Defendant argues that the fruits of the search should nevertheless be suppressed because the Government, through Anderson, either destroyed or at least failed to preserve evidence. He cites <u>Murray</u> for the proposition that courts are

4

"not to give dispositive effect to officer assurances that a warrant would have been sought in the absence of the illegal search," (Doc. No. 81 at 2), and notes the "[t]he presence or absence of bad faith by the police for purposes of the Due Process Clause must necessarily turn on the police's knowledge of the exculpatory value of the evidence at the time it was lost or destroyed." (Id.) (quoting Arizona v. Youngblood, 488 U.S. 51, 57 (1988)). This argument fails for a couple of reasons.

For one, the Supreme Court in Murray stated that "[w]here the facts render [the officers] assurances implausible, the independent source doctrine will not apply." Murray, 487 U.S. at 540. There was nothing implausible about Anderson's statement that the pole camera was used. In fact, Hicks also testified that a pole camera was set up to focus on 1312 South Hampton and it captured events as they transpired in real time. Both also credibly testified that they did not know whether the information from the pole camera was saved and, if so, for how long.

For another, Defendant presumes that a recording from the pole camera would undermine Anderson's testimony and show that the vehicle did not enter the garage. However, "[w]hen the [Government] fails to preserve evidentiary material that might have exonerated the defendant, a defendant must show: 1) that the government acted in bad faith in failing to preserve the evidence; 2) that the exculpatory value of the evidence was apparent before its destruction; and 3) that the nature of the evidence was such that the defendant would be unable to obtain comparable evidence by other means." United States v. Gaither, 65 F. App'x 514, 516–17 (6th Cir. 2003) (emphasis in original) (citing Youngblood, 833 U.S. at 56). "When the government is negligent, or even grossly negligent, in failing to preserve potentially exculpatory evidence, bad faith is not established." Id. (citing Monzo v. Edwards, 281 F.3d 568, 580 (6th Cir. 2002)).

5

Defendant has not shown that the Government acted in bad faith, that the pole camera would have provided exculpatory evidence of which Anderson would have been aware, or even that Anderson was negligent. He simply asks the Court to surmise that the pole camera recording would have shown something different than Anderson testified. However, "mere speculation" is not enough, United States v. Jobson, 102 F.3d 214, 219 (6th Cir. 1996), and neither is conjecture, United States v. Ray, 899 F.3d 852, 864 (10th Cir. 2018).

Accordingly, Defendant's Motion for Reconsideration (Doc. No. 60) is **GRANTED** but, upon reconsideration, this Court's Memorandum Opinion and Order (Doc. No. 54) denying his Motion to Suppress (Doc. No. 47) is **CONFIRMED**.

IT IS SO ORDERED.

_____
WAVERLY D. CRENSHAW, JR.
CHIEF UNITED STATES DISTRICT JUDGE