UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | Case No. 3:17-cr-00039-1 |
| v. | Chief Judge Waverly D. Crenshaw, Jr. |
| ADEBOWALE IJIYODE, | Magistrate Judge Alistair E. Newbern |
| Defendant. | |

To: The Honorable Waverly D. Crenshaw, Jr., Chief District Judge

## **REPORT AND RECOMMENDATION**

After a jury acquitted Defendant Adebowale Ijiyode of the charges against him in this action, Ijiyode filed a motion for return of property seized by the United States during the investigation that led to those charges. (Doc. No. 137.) Specifically, Ijiyode seeks the return of two vehicles, a 2016 Infiniti QX80 and a 2011 Jaguar XJL. (Doc. Nos. 137, 140-1, 140-2.) The United States opposes Ijiyode's motion, arguing that it obtained liens on both vehicles and repossessed the Infiniti and the Jaguar under Tennessee law after Ijiyode failed to make payments on those liens. (Doc. No. 140.) The Court referred Ijiyode's motion to the Magistrate Judge for a report and recommendation (Doc. No. 146), and the Magistrate Judge ordered supplemental briefing and held an evidentiary hearing (Doc. Nos. 147, 152, 153, 156, 161, 165). During the hearing, the Court heard testimony from non-party Alen Husnic and United States Postal Inspector David Wilson. (Doc. No. 166.) Considering the record evidence and the parties' arguments, and for the reasons that follow, the Magistrate Judge will recommend that Ijiyode's motion for return of property be denied.

## I. Factual and Procedural Background[1]

### A. The United States' Investigation and Indictment of Ijiyode and the Seizure of Ijiyode's Property

As part of its criminal investigation of Ijiyode, the United States Postal Inspection Service (USPIS) seized the Infiniti and the Jaguar from a location in Antioch, Tennessee, on February 14 and 15, 2017. (Doc. No. 140-8, PageID# 900.) A federal grand jury then indicted Ijiyode on charges including possession with the intent to distribute marijuana, possession of firearms in furtherance of drug trafficking, and possessing a firearm after a felony conviction. (Doc. No. 1.) The indictment contained a forfeiture allegation seeking criminal forfeiture of the Infiniti, the Jaguar, other vehicles, guns, jewelry, and more than $575,000 in currency that the United States and USPIS had seized in the investigation. (*Id.*) Ijiyode was arrested on the indictment on March 29, 2017. (Doc. No. 6.)

The USPIS served Ijiyode with a "Notice of Seizure of Property and Initiation of Administrative Forfeiture Proceedings" dated April 13, 2017. (Doc. No. 140-7, PageID# 891.) Ijiyode executed an affidavit contesting the seizure of the Infiniti, the Jaguar, and other seized property. (Doc. No. 140-7.)

### B. Husnic's Interest in the Infiniti and the Jaguar

Non-party Alen Husnic also filed a claim on behalf of himself and non-party Tennessee Wholesalers, LLC—an auto dealership—contesting the administrative forfeiture of the Infiniti and the Jaguar.[2] (Doc. No. 140-8.) Husnic stated that he and Tennessee Wholesalers held unpaid liens

---

[1]    The facts in this section are drawn from the exhibits to the United States' response in opposition to Ijiyode's motion (Doc. Nos. 140-1–140-10) and from the transcripts of the Court's evidentiary hearing (Doc. Nos. 166, 167).

[2]    Husnic also submitted a completed USPIS form document entitled "Petition for Remission or Mitigation of Forfeiture[.]" (Doc. No. 140-8, PageID# 897.) Husnic testified at the evidentiary

on both vehicles and submitted copies of the vehicles' titles and bills of sale, and an amortization schedule for the Jaguar. (*Id.*) Both titles listed Tennessee Wholesalers as the first lienholder and provided Husnic's home address. (*Id.*) The Infiniti's bill of sale and title listed Ijiyode as buyer and title holder; the Jaguar's bill of sale and title listed non-party Aaron D. Reynolds as buyer and title holder. (*Id.*) Husnic stated in the administrative claim that he was owed $31,742.00 on the Infiniti and $10,064.17 on the Jaguar. (*Id.*)

Husnic testified that he worked as an agent for Tennessee Wholesalers but did not own the dealership. (Doc. No. 166.) As an agent, Husnic maintained an inventory of cars that he purchased independently and sold to buyers and paid license fees to Tennessee Wholesalers. (*Id.*) Husnic stated that he sold several cars to Ijiyode, including the Infiniti and the Jaguar. (*Id.*) Husnic testified that Ijiyode and Reynolds purchased the Jaguar together "on payments" and that Reynolds made the down payment of $8,500.00 in cash. (*Id.* at PageID# 1099, 1132.) Ijiyode then made payments to Husnic on the Jaguar in cash, in amounts ranging from $2,000.00 to $6,000.00. (Doc. No. 166.) Husnic testified that payments were made to him doing business as (d/b/a) Tennessee Wholesalers and that he had a d/b/a license for Tennessee Wholesalers at his home address. (*Id.*)

Husnic stated that Ijiyode purchased the Infiniti and gave Husnic "a down payment cashier check, which actually directly went to the auction where [Husnic] purchased the car, and [Husnic] was going to finance the rest of it."[3] (*Id.* at PageID# 1100.) Husnic testified that he could not remember if Ijiyode made any subsequent payments on the Infiniti because "that car was wrecked"

---

hearing that, at the time he submitted the petition, he did not realize that it was a separate claim from the administrative claim. (Doc. No. 166.)

[3]     Husnic later testified that there were "[t]wo different cashier checks. One was . . . for 10 [thousand], the other one for around six [thousand]." (Doc. No. 166, PageID# 1133.)

and, around the time the car was repaired and Ijiyode started driving it again, the Infiniti was seized and Ijiyode was arrested. (*Id.* at PageID# 1133.)

### C. The United States' Investigation of Husnic and the Infiniti and the Jaguar Liens

Husnic testified that, after Ijiyode was arrested, Husnic and Tennessee Wholesalers received a notice of seizure from USPIS, and Husnic and his employee Katie Walker filled out and submitted a seized asset claim form as lienholders on the Infiniti and the Jaguar. (Doc. No. 166.) Husnic stated that he never heard back from USPIS with a decision about that claim even though he and Walker called several times asking for information. (*Id.*) Ultimately, a USPIS representative told Husnic that he needed to speak to Chris James, an inspector with the United States Marshal Service, who could release the cars, and provided Husnic with James's phone number. (*Id.*) Husnic stated that he called James and that James and two other law enforcement officers came to Husnic's office to talk about the vehicle liens. (*Id.*) Husnic testified that one of the law enforcement officers "was a Rutherford County detective . . . ." (Doc. No. 166, PageID# 1110.) Counsel for the United States has identified this individual as "Rutherford County Detective . . . Mark Anderson." (*Id.* at PageID# 1141.) Postal Inspector David Wilson testified that he was the third law enforcement officer who visited Husnic's office. (Doc. No. 166.) Husnic testified that he was not present the first time James, Anderson, and Wilson visited his business and that they made an appointment with Walker to come back when Husnic was available. (*Id.*)

Husnic testified that, when the law enforcement officers returned, they asked him questions about the Infiniti and the Jaguar, "how they were sold, how they were paid for, how the payments were made . . . [,]" and whether Husnic knew Ijiyode. (*Id.* at PageID# 1109.) Husnic told them "everything about the cars, how it happened, how [Ijiyode] paid for [the Infiniti] down payment, how he paid on [the] Jaguar." (*Id.*) They asked him if Ijiyode had purchased other cars from him

and Husnic explained that Ijiyode had purchased other cars, but only owed Husnic a balance on the Infiniti and the Jaguar. (Doc. No. 166.)

Wilson also testified about visiting Husnic's business. (*Id.*) Wilson testified that he and other law enforcement officers first went to Husnic's business on or about August 17, 2017, to investigate the validity of the Infinity and Jaguar liens. (Doc. No. 166.) Husnic was not there, but Wilson and the other officers spoke to Walker who "provided the two liens for both vehicles." (*Id.* at PageID# 1143.) Wilson testified that he and the other officers returned and met with Husnic on or about August 23, 2017. (Doc. No. 166.) They asked Husnic how payments were made on the liens. (*Id.*) According to Wilson, Husnic told them that "he would text Mr. Ijiyode and then Mr. Ijiyode would pay him" in cash. (*Id.* at PageID# 1144.) Wilson testified that, based on his experience in law enforcement, he thought this was a "very unusual" payment method and "that it was like structuring money" because there was "[n]o documentation" and "[t]ypically . . . cash payments" under $9,000.00 or $10,000.00. (*Id.* at PageID# 1146.) Wilson also thought it was unusual that the Jaguar was titled in someone else's name and that neither Husnic nor Tennessee Wholesalers filed an IRS Form 8300 when Ijiyode used a $10,000.00 cashier's check as a down payment on the Infiniti.[4] (Doc. No. 166.)

Husnic testified that, a few months after James, Anderson, and Wilson met with him, either James or Anderson called and told Husnic "that they found a solution" that would "be good . . . for all the parties[.]" (*Id.* at PageID# 1111.) The officer asked Husnic to "stop by" the Estes Kefauver Federal Building at a certain date and time and said they would "present everything to" Husnic then. (*Id.*) On March 21, 2018, James or Anderson met Husnic outside the federal building

---

[4]     On cross examination, Wilson testified that he was not sure if businesses are required to file an IRS Form 8300 when receiving cashier's checks instead of cash. (Doc. No. 166.)

and escorted him through the employee entrance and upstairs to the U.S. Attorney's Office. (Doc. No. 166.) Husnic then met with James and Anderson for about thirty minutes or an hour. (*Id.*) Husnic testified that Anderson said the administrative claim Husnic filed for the Infiniti and the Jaguar was unlawful because Husnic did not own Tennessee Wholesalers. (*Id.*) Husnic stated that James and Anderson said they could charge Husnic "with not filing a report for receiving cash over [$]10,000, which [Husnic] told them [he] did not receive." (*Id.* at PageID# 1116.)

Husnic testified that James and Anderson presented him with an affidavit and told him that he could face prosecution if he did not sign it. (Doc. No. 166.) The affidavit stated that no payments on the Infiniti or Jaguar liens had been made to Husnic or Tennessee Wholesalers since February 2017. (Doc. No. 140-3.) It further stated that Husnic,

> both personally and in any capacity [he] ha[d] as Tennessee Wholesaler, LLC[,] withdr[e]w [his] claim(s), and petition, and turn[ed] [over any interest [he] ha[d] in the Infiniti and the Jaguar to the United States, and w[ould] sign any necessary papers to transfer the collection of any lien [he] ha[d], or that Tennessee Wholesalers, LLC ha[d] under [Husnic's] control, and agree[d] that any funds collected or vehicles repossessed [would] be solely the property of the United States, and [he] [would] claim no further interest in them.

(*Id.* at PageID# 877.) Husnic testified that he told James and Anderson that he was "going to talk to a lawyer" and asked them to "give [him] a couple of days to talk to a lawyer and see what he says." (Doc. No. 166, PageID# 1116.) Husnic testified that James and Anderson said, "[y]ou know if you talk to a lawyer and if you hire a lawyer for a federal court, how much that's going to cost" and said that the affidavit was a "once-in-a-lifetime deal" that they would take back if Husnic did not "sign it there right at that moment." (*Id.*) Husnic testified that he "was just tired of" the law enforcement officers visiting his business while "customers [were] coming in" and that he "just didn't want to deal with it." (*Id.* at PageID# 1117.) He testified that he "didn't want to hire a lawyer[,]" "didn't even know what it cost to hire" a lawyer who practiced in federal court, and repeated that James "told [him] it cost a lot[.]" (*Id.* at PageID# 1118.) Asked why he would turn

over his interest in the liens—which totaled almost $50,000.00—to the government, Husnic stated that he "really felt that they [were going to] try [to] prosecute [him]" and, even though he knew he "didn't do anything wrong," he would "have to prove that, hire a lawyer, spend time, go to courts" and he did not want to do all that. (*Id.* at PageID# 1120.) Husnic signed the affidavit on March 21, 2018. (Doc. No. 140-3.)

The United States sent Ijiyode's counsel a letter in April 2018 notifying them that Husnic had transferred the liens on the Infiniti and the Jaguar to the United States and enclosing a copy of Husnic's affidavit. (Doc. Nos. 140-9, 140-10.) In the letter, the United States asked Ijiyode to withdraw his administrative claim to the vehicles and stated that, once he did so, the vehicles would be sold and the proceeds from the sale would be forfeited. (Doc. Nos. 140-9, 140-10.)

### D. Ijiyode's Acquittal

On October 18, 2018, a jury acquitted Ijiyode of all charges in the indictment. (Doc. No. 121.) In February and April 2019, the United States Marshal Service returned most of Ijiyode's seized property, including a 2008 Lexus, a 2010 BMW, several pieces of jewelry, and more than $575,000.00 in currency. (Doc. Nos. 126–134.) The United States did not return the Infiniti or the Jaguar.

### E. Administrative Forfeiture of the Infiniti and Jaguar Liens to the United States and the United States' Repossession of Both Vehicles

On October 25, 2019, USPIS issued declarations of administrative forfeiture regarding the liens on the Infiniti and the Jaguar. (Doc. Nos. 140-4, 140-5.) The declarations described the assets being forfeited as "Tennessee Wholesalers, LLC assigned Lien as to 2016 Infiniti QX8[0] VIN # JN8AZ2NE2G9121777" and "Tennessee Wholesalers, LLC assigned Lien as to 2011 Jaguar XJL VIN # SAJWA2GB8BLV08293[.]" (Doc. Nos. 140-4, 140-5.) The declarations further stated that,

[o]n August 23, 2019 at ANTIOCH, TN, the described property was seized for forfeiture pursuant to 21 USC 881.

In accordance with 39 CFR 233.7, notice of the seizure and intent to forfeit was published for thirty (30) consecutive days from 08/26/2019 to 09/24/2019 on the official government web site (www.forfeiture.gov) and was sent to each party who appeared to have an interest in this/these property(ies).

Because there were no claims filed for the property within thirty (30) days from the date of the last publication of the Notice of Seizure or thirty-five (35) days from the date the Personal Seizure Notices were mailed, it is hereby declared that the property has been forfeited to the United States Government pursuant to 21 USC 881.

(Doc. Nos. 140-4, 140-5.)

Husnic testified that he was aware that the liens on the Infiniti and the Jaguar had been administratively forfeited. (Doc. No. 166.) Counsel for the United States stated that these declarations of administrative forfeiture likely were not provided to Ijiyode because he was not the lienholder. (Doc. No. 167.)

In March 2020, the United States notified Ijiyode and Reynolds by letter that, because of the unpaid balances on the Infiniti and Jaguar liens, the United States had repossessed the vehicles under Tennessee law. (Doc. No. 140-6.) The notification letters stated that the United States was preparing to sell the Infiniti and the Jaguar unless Reynolds or Ijiyode paid the lien balances in full by May 1, 2020. (*Id.*) The letters further stated that the date of sale would "be set sometime after the Covid-19 pandemic is resolved and the auctions are reinstated." (*Id.* at PageID# 885, 887.)

### F. Ijiyode's Motion to Return Property

Ijiyode has now filed the present motion "to release and return seized property" asking the Court to order the United States to return the Infiniti and the Jaguar to him. (Doc. No. 137, PageID# 854.) Ijiyode argues that the vehicles should be returned to him because the forfeiture allegation in the indictment cited 21 U.S.C. § 853 as the statutory basis for forfeiture of the

vehicles, which requires a conviction to support criminal forfeiture of property. Ijiyode states that the forfeiture is not valid because he was acquitted of all charges in the indictment. (Doc. No. 137.)

The United States has construed Ijiyode's motion as a motion for return of seized property under Federal Rule of Criminal Procedure 41(g). (Doc. No. 140.) The United States opposes the motion and argues that it is not relying on 21 U.S.C. § 853 as a basis for retaining the vehicles. (*Id.*) Instead, the United States argues that it obtained the Infiniti and Jaguar liens from Husnic and by subsequent administrative forfeiture and that it has lawfully repossessed the vehicles under Tennessee law because the liens are in default. (*Id.*) The United States further argues that this Court should deny Ijiyode's motion because the Court lacks jurisdiction to review administrative forfeiture determinations, Ijiyode lacks standing to challenge the validity of the United States' liens or to assert ownership of the Jaguar, Ijiyode has an adequate remedy to regain possession of the vehicles under state law, and Ijiyode's motion is barred by the doctrines of unclean hands and laches. (*Id.*) Ijiyode did not file a reply.

The Court held a telephonic status conference with the parties regarding Ijiyode's motion and ordered them to "file a written status report and[,] if necessary, request a follow-up status conference." (Doc. No. 143.) The United States filed a status report reiterating its position and arguing that Ijiyode's motion "should be denied without expending any further judicial resources." (Doc. No. 144, PageID# 964.) Ijiyode's status report did not respond to the United States' arguments and requested that the Court schedule an evidentiary hearing on his motion. (Doc. No. 145.) The Court referred Ijiyode's motion for return of property "to the Magistrate Judge for a report and recommendation and an evidentiary hearing, if needed." (Doc. No. 146.)

The Magistrate Judge ordered Ijiyode to file a supplemental memorandum in support of his motion that addressed the United States' arguments and the need for an evidentiary hearing.

9

(Doc. No. 147.) Ijiyode's supplemental memorandum argues that he has standing to move for return of the Infiniti and the Jaguar because he filed an administrative claim in response to the April 13, 2017 USPIS notice of seizure and initiation of administrative forfeiture proceedings and because he "has both ownership and possessory interests in the vehicles . . . ." (Doc. No. 152, PageID# 980.) Ijiyode further argues that the United States improperly coerced Husnic to transfer the liens. Ijiyode states that "Husnic's testimony will support that he was threatened and coerced into involuntarily surrendering his valid liens to the government." (*Id.* at PageID# 981.)

The United States responded to Ijiyode's supplemental memorandum arguing that Ijiyode has not contested that he owes a debt on both liens and has not adequately supported his arguments that he has an ownership interest in both vehicles and that the United States' liens are invalid. (Doc. No. 153.) The United States further argues that, even if Ijiyode had standing to challenge the forfeiture of the liens, he should have done so through the administrative forfeiture process or by exercising his redemption rights under state law. (*Id.*)

The Magistrate Judge held an evidentiary hearing on Ijiyode's motion at which Husnic and Wilson testified and the parties offered additional argument.[5]

## II.     Legal Standard

Ijiyode has not specified a legal basis for his motion. The United States asserts that the motion is made under Federal Rule of Criminal Procedure 41(g), which Ijiyode has not contested. Rule 41(g) provides that

> [a] person aggrieved by an unlawful search and seizure of property or by the deprivation of property may move for the property's return. The motion must be filed in the district where the property was seized. The court must receive evidence on any factual issue necessary to decide the motion. If it grants the motion, the court

---

[5]     The United States filed a declaration by James (Doc. Nos. 164, 164-1), who was not available to testify at the evidentiary hearing. The Magistrate Judge did not admit James's declaration into evidence (Doc. No. 167).

must return the property to the movant, but may impose reasonable conditions to protect access to the property and its use in later proceedings.

Fed. R. Crim. P. 41(g).

"A federal court has equitable authority, even after a criminal proceeding has ended, to order a law enforcement agency to turn over property it has obtained during the case to the rightful owner or his designee." *Henderson v. United States*, 575 U.S. 622, 625–26 (2015); *see also Savoy v. United States*, 604 F.3d 929, 932 (6th Cir. 2010) ("Under Rule 41, '[a] district court has both the jurisdiction and the duty to return the contested property once the government's need for it has ended.'" (alteration in original) (citation omitted)). "The general rule is that seized property, other than contraband, should be returned to its rightful owner once the criminal proceedings have terminated." *Savoy*, 604 F.3d at 932 (quoting *United States v. Hess*, 982 F.2d 181, 186 (6th Cir. 1992)). However, the party moving for return bears the burden to show, by a preponderance of the evidence, that he or she is lawfully entitled to possess the property. 3A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 690 (4th ed. updated Apr. 2022); *see also Savoy*, 604 F.3d at 932–33 ("'[T]he person seeking return of the property must show that they are lawfully entitled to possess it.'" (quoting *United States v. Headley*, 50 F. App'x 266, 267 (6th Cir. 2002))); *United States v. Kimball*, No. 3:02-cr-00053, 2017 WL 2417327, at *4 (M.D. Tenn. Apr. 13, 2017) ("The moving party must demonstrate that he is entitled to the property by a preponderance of the evidence.").

"There is no limitation on the time for a motion to return except for the doctrine of laches." 3A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 690 (4th ed. updated Apr. 2022). "Because of the equitable nature of the determination," the Sixth Circuit reviews district courts' rulings on Rule 41(g) motions for "'abuse of discretion.'" *United States v. Duncan*, 918 F.2d 647, 654 (6th Cir. 1990) (quoting *Barrett v. Sec'y of Health & Hum. Servs.*, 840

F.2d 1259, 1263 (6th Cir. 1987)); *see also Savoy*, 604 F.3d at 932 ("We review for abuse of discretion the denial of a Rule 41 motion for return of property[.]").

## III.    Analysis

### A.    Threshold Determinations

The United States advances several reasons why the Court should not reach the merits of Ijiyode's motion: that district courts lack jurisdiction to review administrative forfeiture determinations; that Ijiyode lacks standing to challenge the validity of the Infiniti and the Jaguar liens and assert ownership of the Jaguar; that Ijiyode has an adequate remedy under state law; and that the doctrines of unclean hands and laches bar Ijiyode's requested relief. (Doc. No. 140.) None of these arguments prevents the Court from deciding Ijiyode's motion on the merits.

#### 1.    Administrative Forfeiture Proceedings

The United States relies on two Sixth Circuit cases to support its argument that Rule 41(g) relief is not available to challenge an executed administrative forfeiture, *United States v. King*, 442 F. App'x 212 (6th Cir. 2011), and *Parks v. United States*, 895 F.2d 1414, 1990 WL 12097 (6th Cir. Feb. 14 1990). (Doc. No. 140.) In *King*, the Sixth Circuit held that "[a] motion to set aside a forfeiture under 18 U.S.C. § 983(e) is the exclusive remedy for seeking to set aside a declaration of forfeiture under a civil forfeiture statute" and that district courts "lack[ ] jurisdiction to review the merits of [an] administrative forfeiture determination." 442 F. App'x at 213. Similarly, in *Parks* the Sixth Circuit held that Rule 41(g) "cannot be used to remedy a party's failure to file a claim to property seized by and subsequently administratively forfeited to the United States under 21 U.S.C. § 881 when that party has received notice of the proposed forfeiture."[6] 1990 WL 12097, at

---

[6]     *Parks* addressed what was then Rule 41(e). 1990 WL 12097, at *1. Rule 41(e) was redesignated Rule 41(g) in 2002, and "[c]ourts recognize that case law interpreting former

*1. These cases do not bar this Court's consideration of Ijiyode's Rule 41(g) motion. Ijiyode's motion seeks return of the Infiniti and the Jaguar (Doc. No. 137), and the record shows that, while the liens on these vehicles were administratively forfeited to the United States under 21 U.S.C. § 881, the vehicles themselves were not (Doc. Nos. 140-4, 140-5, 167). USPIS initiated administrative forfeiture proceedings regarding the Infiniti and the Jaguar and notified Ijiyode and Husnic of the proceedings in April 2017. Ijiyode and Husnic filed administrative claims contesting forfeiture of the vehicles. (Doc. Nos. 140-7, 140-8.) But there is no evidence in the record that the United States or USPIS ever completed those administrative proceedings, and the United States has not argued that the vehicles themselves were administratively forfeited.

With respect to the subsequent administrative forfeiture proceedings regarding the vehicles' liens, the United States admitted during the evidentiary hearing that Ijiyode did not receive notice of those administrative forfeiture proceedings because he was not the lienholder. (Doc. No. 167.) The United States therefore has not shown that completed administrative forfeiture proceedings for which Ijiyode received notice bar the Court from considering Ijiyode's Rule 41(g) motion for return of the vehicles themselves.

### 2. Ijiyode's Standing

The United States argues that Ijiyode lacks standing to challenge the validity of the United States' liens and lacks standing to claim ownership of the Jaguar. (Doc. Nos. 140, 153.) "In essence the question of standing is whether the litigant is entitled to have the court decide the merits of the dispute or of particular issues." *Warth v. Seldin*, 422 U.S. 490, 498 (1975). The United States argues that Ijiyode cannot challenge the validity of the liens on the Infiniti and the Jaguar because

---

Rule 41(e) generally applies to current Rule 41(g)." 3A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 690 (4th ed. updated Apr. 2022).

he was never the lienholder and cannot seek return of the Jaguar because he is not the titleholder. (Doc. Nos. 140, 153.) Rule 41(g) provides that any "person aggrieved by . . . the deprivation of property may move for the property's return." Fed. R. Crim. P. 41(g). This broad language allows individuals who are not parties to the underlying criminal proceedings to file motions under Rule 41(g). 3A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 690 (4th ed. updated Apr. 2022). Individuals may also move for the return of property they do not own, as long as they are lawfully entitled to possess the property. *See id.*; *Savoy*, 604 F.3d at 932–33. The United States does not contest that Ijiyode possessed the vehicles before they were seized and has not shown that Ijiyode is not "aggrieved" by being deprived of his possession of the vehicles within the meaning of Rule 41(g) such that he lacks standing for the Court to decide his motion.

### 3. Unclean Hands

"The unclean hands doctrine derives from the equitable maxim that 'he who comes into equity must come with clean hands.'" *Cleveland Newspaper Guild, Local 1 v. Plain Dealer Publ'g Co.*, 839 F.2d 1147, 1155 (6th Cir. 1998) (quoting *Precision Instrument Mfg. Co. v. Auto. Maint. Mach. Co.*, 324 U.S. 806, 814 (1945)). "This maxim 'closes the doors of a court of equity to one tainted with inequitableness or bad faith relative to the matter in which he seeks relief, however improper may have been the behavior' of the opposing party." *Id.* (quoting *Precision Instrument Mfg. Co.*, 324 U.S. at 814).

The United States argues that the unclean hands doctrine bars Ijiyode's Rule 41(g) motion because "Ijiyode seeks return of property he has not paid for and does not own." (Doc. No. 140, PageID# 871.) Specifically, the United States argues that Ijiyode has failed to make payments on the Infiniti and the Jaguar since February 2017 and "has done nothing to bring his account current . . . forcing the United States to seek disposal of the collateral." (*Id.*) The record shows that the United States seized the Infiniti and the Jaguar in February 2017, Husnic signed an affidavit

14

transferring the liens to the United States in March 2018, and the liens were administratively forfeited to the United States in October 2019. (Doc. Nos. 140-3–140-5, 140-8.) There is no indication that the United States ever demanded that Ijiyode make payments on the liens during that time. In letters to Ijiyode's counsel sent in April 2018, the United States informed Ijiyode that Husnic had transferred the liens to the United States but did not demand payment from Ijiyode. (Doc. Nos. 140-9, 140-10.) Instead, the United States "ask[ed] that Mr. Ijiyode withdraw any claim he has asserted to the vehicles and sign the enclosed documents" to that effect. (Doc. No. 140-9, PageID# 908; Doc. No. 140-10, PageID# 934.) "Once this is done," the United States said, "the vehicles will be sold and the proceeds from the sale will be forfeited." (Doc. No. 140-9, PageID# 908; Doc. No. 140-10, PageID# 934.)

This evidence belies the United States' assertion that it was Ijiyode's nonpayment that "forc[ed] the United States to seek to dispose of the" Infiniti and Jaguar. (Doc. No. 140, PageID# 871.) Further, the United States has not provided any evidence or legal authority to support its argument that Ijiyode was obligated to make payments on the vehicle liens after the United States seized the vehicles, depriving Ijiyode of their use.

### 4. Laches

The Sixth Circuit defines laches as "a negligent and unintentional failure to protect one's rights." *Chirco v. Crosswinds Cmtys., Inc.*, 474 F.3d 227, 231 (6th Cir. 2007); *see also Kansas v. Colorado*, 514 U.S. 673, 687 (1995) (defining laches "'as neglect to assert a right or claim which, taken together with lapse of time and other circumstances causing prejudice to the adverse party, operates as [a] bar in [a] court of equity'" (quoting Black's Law Dictionary 875 (6th ed. 1990)). A party asserting laches as an affirmative defense "'must show: (1) lack of diligence by the party against whom the defense is asserted, and (2) prejudice to the party asserting it.'" *Chirco*, 474 F.3d at 331 (quoting *Herman Miller, Inc. v. Palazzetti Imports & Exports, Inc.*, 270 F.3d 298, 230 (6th

Cir. 2001)). The Sixth Circuit has emphasized that "a mere lapse of time" without accompanying prejudice is insufficient to show that the doctrine of laches bars relief:

> [L]aches does not result from a mere lapse of time but from the fact that, during the lapse of time, changed circumstances inequitably work to the disadvantage or prejudice of another if the claim is now to be enforced. By his negligent delay, the plaintiff may have misled the defendant or others into acting on the assumption that the plaintiff has abandoned his claim, or that he acquiesces in the situation, or changed circumstances may make it more difficult to defend against the claim.

*Id.* (alteration in original) (quoting 11A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2946 (2d ed. 1995)).

The United States argues that Ijiyode filed his Rule 41(g) motion "three years after his last payment on his debt and nearly two years after his acquittal of criminal charges," even though "[h]e has been aware and on notice of the United States' interest." (Doc. No. 140, PageID# 873.)

Ijiyode first sought return of the Infiniti and the Jaguar in May 2017 by filing a claim contesting their administrative forfeiture (Doc. No. 140-7). The United States asked Ijiyode to withdraw that claim in April 2018 after Husnic transferred the liens to the United States (Doc. Nos. 140-9, 140-10). It appears that the United States took no further action in the administrative forfeiture proceedings when Ijiyode did not. As for the timing of Ijiyode's Rule 41(g) motion, the docket shows that Ijiyode filed his motion approximately one-and-a-half years after his acquittal and less than one year after the U.S. Marshal Service returned his other seized vehicles. (Doc. Nos. 121, 133, 134, 137.) Courts in this district have found that "analogous statute[s] of limitations . . . create a 'presumption of laches[,]'" that the six-year limitation period that applies to civil actions against the United States "is reasonably borrowed for Rule 41(g) motions[,]" and that, "because laches depends on equitable circumstances, a shorter period may also preclude relief under Rule 41(g)." *United States v. Kimball*, No. 3:02-cr-00053, 2017 WL 2417327, at *5 (M.D. Tenn. Apr. 13, 2017) (quoting *Tandy Corp. v. Malone & Hyde, Inc.*, 769 F.2d 362, 365 (6th Cir.

1985)). The United States, however, has not addressed why a much shorter period—less than two years as opposed to six—should invoke laches in Ijiyode's case.

Further, the United States has not argued that it has been prejudiced by delay. The record shows that, in March 2020, the United States sent Ijiyode and Reynolds letters stating that it had repossessed the Infiniti and the Jaguar under Tennessee law, that it was "preparing to sell" both vehicles, and that "[t]he date of the sale w[ould] be set sometime after the Covid-19 pandemic is resolved and the auctions are reinstated."[7] (Doc. No. 140-6, PageID# 885.) There is no evidence in the record that the vehicles have been sold. Rather, counsel for the United States represented during the evidentiary hearing that the repossession proceedings are "on hold pending" the Court's resolution of Ijiyode's Rule 41(g) motion (Doc. No. 167, PageID# 1179). The United States has not argued that Ijiyode misled the United States "into acting on the assumption that [he] ha[d] abandoned his claim" to the Infiniti and the Jaguar or that "changed circumstances . . . make it more difficult [for the United States] to defend against [his] claim." *Chirco*, 474 F.3d at 231 (quoting 11A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2946 (2d ed. 1995)). The United States therefore has not carried its burden to show that laches bars the Court from considering Ijiyode's Rule 41(g) motion.

Because the United States' arguments for declining to exercise equitable jurisdiction fail, the Court must consider the merits of Ijiyode's Rule 41(g) motion.

### B. Whether Ijiyode Is Entitled to Lawful Possession of the Infiniti and the Jaguar

Ijiyode's only argument for return of the Infiniti and the Jaguar is that the United States' liens are invalid because the United States "threatened and coerced [Husnic] into involuntarily

---

[7]     The notice letters are dated March 19, 2019 (Doc. No. 140-6), but the United States has represented that it sent the letters "[o]n March 20, 2020" (Doc. No. 140, PageID# 867), and other documents accompanying the notice letters are dated March 19, 2020 (Doc. No. 146).

surrendering his valid liens to the government." (Doc. No. 152, PageID# 981.) The United States responds that its liens are valid because "[t]he liens were transferred to the United States as an administrative forfeiture by a non-party lienholder, the circumstances of which are wholly irrelevant to this proceeding." (Doc. No. 140, PageID# 869.) But the transfer of the vehicle liens from Husnic to the United States—be it voluntary or coerced, an issue that the Court does not reach here—is a red herring. Ijiyode's interest in the vehicles is subject to liens, whether those liens are held by Tennessee Wholesalers, Husnic, or the United States. The means by which the United States obtained those liens does not affect Ijiyode's interest.[8] The question under Rule 41(g) is what Ijiyode was entitled to have returned to him when he was acquitted.

The cars were seized from Ijiyode on February 14 and 15, 2017, and have been held by the United States since that time. Husnic executed the affidavit transferring his liens on the vehicles to the United States on March 21, 2018. At that point, assuming the validity of the lien transfer, the interest in the vehicles was shared between Ijiyode and the United States. Ijiyode was acquitted on October 18, 2018. At that point, Ijiyode's seized property was no longer subject to forfeiture and the United States no longer had a reason to possess it stemming from Ijiyode's criminal charges. *See United States v. Ford*, 64 F. App'x 976, 981 (6th Cir. 2003) (noting that "the government is not an owner of seized property until the time at which forfeiture is decreed"). It

---

[8] When asked why the question of whether the lien transfer was coerced was an issue for Ijiyode to raise instead of Husnic, Ijiyode's counsel responded: "To think that Mr. Husnic would have to incur the cost under these circumstances to hire an attorney, to come to the United States – to come to the United States District Court with a case that's in – quite frankly . . . an extremely unusual and muddled procedural posture to try to pierce through that and say, I'm Alen Husnic, I have a lien here that I feel I should have never given up, it just – it seems like too much to ask for somebody like Mr. Husnic to do that." (Doc. No. 167, PageID# 1198.) The Court finds this answer unpersuasive. Husnic's argument—as articulated by Ijiyode's counsel—that he was unlawfully coerced into transferring the vehicle liens is quite simple. It appears that Husnic has chosen not to make that argument on his own behalf.

18

did, however, retain the interest it had obtained in the vehicles through the transfer of Husnic's liens. The United States returned Ijiyode's seized property—but not the Infiniti or the Jaguar—in February and April 2019. The United States declared that the liens on the vehicles had been forfeited under 21 U.S.C. § 881 on October 25, 2019.[9] It did not issue notices that it intended to repossess the vehicles under Tenn. Code Ann. § 47-9-611 to Ijiyode and Reynolds—triggering Ijiyode's rights under Tennessee law—until March 19, 2020.[10]

"When a Rule 41(g) motion is filed after criminal proceedings have been terminated, 'the person from whom the property was seized is presumed to have a right to its return, and the government must demonstrate that it has a legitimate reason to retain the property.'" *United States v. Homrighausen*, 327 F. App'x 124, 126 (11th Cir. 2008) (quoting *United States v. Potes Ramirez*, 260 F.3d 1310, 1314 (11th Cir. 2001)). Here, the United States has shown that it is the current lienholder for both vehicles. It is uncontested that Ijiyode has not made any payments on the vehicles since February 2017. Although the United States no longer has a right to possess the vehicles as property subject to forfeiture in Ijiyode's criminal proceedings—the basis on which it originally took possession—it now has a right as the holder of liens that are at least arguably in default to possess the vehicles under Tennessee repossession law.[11] *See* Tenn. Code Ann. § 47-9-

---

[9]     Counsel for the United States represented in the evidentiary hearing that, although Ijiyode's prosecution brought the vehicles to the United States' attention, the United States had an independent basis for obtaining the liens from Husnic and that the basis for the administrative forfeiture of the liens under 21 U.S.C. § 881 was not Ijiyode's prosecution. (*See* Doc. No. 167, PageID# 1176, 1183.)

[10]     These facts raise an unanswered question: If the United States believe Husnic did not have the authority to claim interest in the vehicles for liens held in the name of Tennessee Wholesalers why did it have Husnic execute an affidavit relinquishing the liens on Tennessee Wholesalers' behalf? Again, however, that question is for Husnic to raise if he sees fit.

[11]     Neither party has provided any evidence of the terms of the vehicles' financing. The amortization schedule for the Jaguar shows regular monthly payments. (Doc. No. 140-9, PageID# 920.) As set out above, the United States has not offered any authority to show that Ijiyode was

19

607 (addressing the rights and duties of a secured party in possession of collateral). The United States thus has a legitimate reason to retain possession of the vehicles for purposes of Rule 41(g).

Ijiyode could have argued that the United States did not provide him with a timely opportunity to assert his interest in the vehicles after he was acquitted and that he is entitled to the value of the possessory interest he lost during that time. *See Nichols v. Wayne Cnty., Michigan*, 822 F. App'x 445, 449 (6th Cir. 2020) (finding that government is not "off the due-process hook" when it has seized mobile property like a vehicle); *see also Krimstock v. Kelly*, 306 F.3d 40, 61 (2d Cir. 2002) (recognizing, in related context, an individual's "'important interest in the possession of his [or her] motor vehicle,' which is 'often his [or her] most valuable possession'") (alterations original) (quoting *Lee v. Thornton*, 538 F2d 27, 31 (2d Cir. 1976). Ijiyode has not made those arguments or suggested a means by which the Court could calculate the value of his lost interest. Ijiyode has only argued that the United States must release and return the vehicles to him without acknowledging the effect of the liens on his right to possess them.

Ijiyode has not shown that he is entitled to return of the vehicles under Rule 41(g). This does not mean that Ijiyode is without recourse, however. Repossession proceedings under Tennessee law afford Ijiyode the opportunity to assert his interest in the vehicles and, if he is able, satisfy his debt.[12] Tenn. Code Ann. § 47-9-623 (addressing right to redeem collateral). The United States has provided Ijiyode (and Reynolds) the notice required by Tennessee law before disposing of the vehicles through commercial sale. *See Mallicoat v. Volunteer Fin. & Loan Corp.*, 112, 415

---

required to make payments on the vehicles after they were seized. However, Ijiyode also has not argued that he was not in default.

[12]    The United States confirmed at the evidentiary hearing that it is not asking for "interest, late interest or anything like that . . . [it is] just asking for what Mr. Husnic said was owed on the lien. That's it." (Doc. No. 167, Page ID# 1181.)

S.W.2d 347, 350 (Tenn. Ct. App. 1966) (holding that purpose of notice provision in state-law forfeiture proceedings is "to enable the debtor to protect his interest in the property by paying the debt, finding a buyer or being present at the sale to bid on the property or have others do so, to the end that it be no sacrificed by a sale at less than its true value"). Ijiyode may pursue his interest in the vehicles in those proceedings if he sees fit to do so.[13]

## IV. Recommendation

For these reasons, the Magistrate Judge RECOMMENDS that Ijiyode's motion for return of property (Doc. No. 137) be DENIED.

Any party has fourteen days after being served with this Report and Recommendation to file specific written objections. Fed. R. Crim. P. 59. Failure to file specific objections within fourteen days of receipt of this report and recommendation can constitute a waiver of appeal of the matters decided. *Id.* A party who opposes any objections that are filed may file a response within fourteen days after being served with the objections.

Entered this 30th day of December, 2022.

ALISTAIR E. NEWBERN
United States Magistrate Judge

---

[13]     As the United States has argued, the availability of an adequate state-law remedy would provide another basis for denying Ijiyode the equitable relief afforded under Rule 41(g). *See Brown v. United States*, 692 F.3d 550, 552 (6th Cir. 2012) (alteration in original) (quoting *Shaw v. United States*, 891 F.2d 602, 603 (6th Cir. 1989)). The Court need not and does not reach the question of whether the rights afforded under Tenn. Code Ann. § 47-9-623 are "as complete, practicable, and efficient as that which equity could afford." *Boise Artesian Hot & Cold Water Co. v. Boise City*, 213 U.S. 276, 281 (1909).